UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANET SILVER :
   Plaintiff, :
   :
  v. :
   : Civil No. 3:09CV912 (PCD)
LAW OFFICES OF HOWARD LEE :
SCHIFF, P.C. :
   :
   Defendant. :

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Janet Silver ("Silver") and Defendant Law Offices of Howard Lee Schiff, P.C. ("Schiff") each move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment. For the reasons stated herein, Plaintiff's motion for summary judgment **[Doc. No. 42]** is **denied** and Defendant's motion for summary judgment **[Doc. No. 18]** is **granted in part** and **denied in part.**

### I. BACKGROUND

Plaintiff brings this action against Defendant under the Fair Debt Collection Practices Act ("FDCPA"), see 15 U.S.C. § 1692 et seq. Plaintiff is a resident of Connecticut and a consumer within the meaning of FDCPA, 15 U.S.C. § 1692a(3). Defendant is a law firm in the practice of consumer debt collection and engaged in efforts to collect personal credit accounts from Plaintiff in the name of Discover Bank ("Discover") and RAB Performance Recoveries ("RAB"). (Pl.'s Rule 56(a)(1) Stmt. ¶¶ 2-3.); 15 U.S.C. § 1692a(6).

In Discover Bank v. Janet Silver, Small Claims Docket No. SCANH 78660, judgment was

entered against the Plaintiff on May 18, 2006, for a total of $3,785.37. The Court ordered Plaintiff to make payments of $35.00 per week, beginning on June 18, 2006. (Def.'s Ex. A.) To date, Ms. Silver has paid $968.89 against this judgment. (Def.'s Ex. 2.) Similarly, in <u>RAB Performance Recoveries LLC v. Janet Silver</u>, Small Claims Docket No. SCC 106972, judgment was entered against the Plaintiff on August 14, 2008, for a total of $882.63. The Court ordered Plaintiff to make payments of $35.00 per week, beginning on September 4, 2008. (Def.'s Ex. B.) To date, Ms. Silver has paid $689.74 against this judgment. (Moylan Dep.)

This claim originates from two $50.00 payments, received by the Defendant from the Plaintiff on December 30, 2008. (Pl.'s Rule 56(a)(1) Stmt. ¶ 6.) Both payments were remitted in the form of a bank check, each for the amount of $50.00. (Id.) One check read "for credit to account # CNP65643" and the other read "for credit to account # Discover." (Pl.'s Rule 56(a)(1) Stmt. ¶ 7.) Both of these payments, in error, were credited towards Plaintiff's balance on the RAB account. (Pl.'s Rule 56(a)(1) Stmt. ¶ 6.)

On January 6, 2009, Defendant sent Plaintiff a letter regarding a deficiency in Plaintiff's Discover account. The letter stated that "THE PAYMENT DUE IN THIS FILE HAS NOT BEEN RECEIVED" and invited the Plaintiff to provide the number of the check that supposedly satisfied payment. (Pl.'s Rule 56(a)(1) Stmt. ¶ 8.) Similar letters were resent on March 5, 2009 and May 13, 2009. (Pl.'s Rule 56(a)(1) Stmt. ¶ 21.) In March of 2009, Plaintiff responded by inquiring about the payments at issue and enclosing copies of the cancelled checks in question. (Pl.'s Rule 56(a)(1) Stmt. ¶ 9.) After no adjustment was made on the accounts, Plaintiff faxed another inquiry to Defendant's office on April 17, 2009. This further inquiry did not result in any adjustments. (Pl.'s Rule 56(a)(1) Stmt. ¶¶ 11-13.)

On May 28, 2009, Plaintiff's counsel informed Defendant that a payment designated for

Plaintiff's Discover account had been misapplied to Plaintiff's RAB account. On the same day, Defendant responded, indicating that there was no available information regarding a misapplied payment. (Pl.'s Rule 56(a)(1) Stmt. ¶¶ 15-16.) The following week, Defendant again responded by insisting that Plaintiff's file, including all associated payments, had been reviewed for errors and that none were found. Defendant noted that Plaintiff may have failed to properly indicate where to apply a payment. (Pl.'s Rule 56(a)(1) Stmt. ¶¶ 17-18.) The next month, on July 28, 2009, Plaintiff's accounts were adjusted. (Pl.'s Rule 56(a)(1) Stmt. ¶ 20.)

Plaintiff now brings this complaint seeking relief under the FDCPA. Plaintiff alleges that Defendant (1) failed to properly allocate Plaintiff's payments in violation of 15 U.S.C. § 1692h,[1] (2) demanded a greater balance than what was actually owed in violation of 15 U.S.C. § 1692e,[2] (3) directly communicated with Plaintiff after being informed that Plaintiff had retained counsel in violation of 15 U.S.C. § 1692c,[3] (4) collected exempted funds from Plaintiff's bank account

---

[1] Multiple debts. If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, *shall apply such payment in accordance with the consumer's directions*. (emphasis added).

[2] False or misleading representations. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
[...]
(2) The false representation of--
(A) the character, amount, or legal status of any debt; or....

[3] Communication in connection with debt collection.
(a) Communication with the consumer generally. Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--
[...]
  (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or. . . .

3

in violation of CONN. GEN STAT. § 52-367b(c),[4] and (5) advised Plaintiff that 25% of her wages could be garnished without informing her of a "procedure whereby defendant normally agrees to modify an execution to a lesser figure" in violation of 15 U.S.C. § 1692e.[5] (Compl. ¶ 12.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the

---

[4] Removal of funds from judgment debtor's account. [...] Notwithstanding the provisions of this subsection, if electronic direct deposits that are readily identifiable as exempt federal veterans' benefits, Social Security benefits, including, but not limited to, retirement, survivors' and disability benefits, supplemental security income benefits or child support payments processed and received pursuant to Title IV-D of the Social Security Act were made to the judgment debtor's account during the thirty-day period preceding the date that the execution was served on the financial institution, then the financial institution *shall leave the lesser of the account balance or one thousand dollars in the judgment debtor's account*. . . . (emphasis added).

[5] False or misleading representations. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

The same legal standards apply when considering cross-motions for summary judgment. A court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004) (citations omitted); see also Scholastic, Inc. v. Harris, 259 F.3d 73, 81 (2d Cir. 2001). A court must deny both parties' motions for summary judgment if it finds the existence of disputed material facts. Morales v. Quintel Entertainment, Inc., 249 F.3d 115, 121 (2d Cir. 2001). Therefore, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party who motion is under consideration." Id. at 121.

### III. DISCUSSION

#### A. Misapplication of Payments

Plaintiff claims that Defendant misapplied one of Plaintiff's scheduled payments, intended for her Discover account, to her RAB account. (Compl. ¶ 7.) Plaintiff and Defendant have stipulated that two $50.00 checks, issued from Plaintiff to Defendant, were received by Defendant on December 30, 2009. (Pl.'s Rule 56(a)(1) Stmt. ¶ 6.) Of the two checks, one read "for credit to account # CNP65643" and the other read "for credit to account # Discover." (Pl.'s

Rule 56(a)(1) Stmt. ¶ 7.) However, both checks were credited towards Plaintiff's balance on the RAB account. Plaintiff asserts a violation of the FDCPA as a result. The statute states:

> Multiple debts. If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, *shall apply such payment in accordance with the consumer's directions*.

15 U.S.C. § 1692h (emphasis added). Defendant failed to apply Plaintiff's payment "in accordance with the consumer's directions" when it applied Plaintiff's check designated for her Discover account to her RAB account. Following Defendant's error in posting Plaintiff's payments, Defendant overstated the amount due on Plaintiff's Discover account. (Compl. ¶ 11.) Defendant sent two letters, dated March 5, 2009 and May 13, 2009, that overstated the balance owed by Plaintiff by $50.00. (Pl.'s Rule 56(a)(1) Stmt. ¶ 21.)

Although Defendant does not dispute that it failed to follow Plaintiff's directions, Defendant claims an affirmative defense provided for in the Act.

> (b) Factors considered by court. In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors-
>
> (1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or
> [. . .]
> (c) Intent. A debt collector may not be held liable in any action brought under this title [15 USCS 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k. See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605, 1608 (U.S. 2010); Stebbins v. Allied Account Servs., 1992 U.S. Dist. LEXIS 22760, at

*2-3 (D. Conn. June 23, 1992). Defendant argues that it should be afforded "an absolute defense to liability for violations of the FDCPA" because "a bona fide error was made in the posting of [the December 30, 2009] check." (Def.'s Mem. 5.) Alternatively, Plaintiff asserts that "[d]efendant cannot meet its factual burden" and that "the Court should reject the 'bona fide error' defense as a matter of law." (Pl.'s Mem. 8-9.)

In order to avail itself of the benefits of this defense, a debt collector must prove four factors: "(1) the violation was unintentional; (2) it was a bona fide error; (3) it was not a legal error, e.g., the error did not result from ignorance of the law; and (4) it maintained procedures reasonably adapted to avoid such error." Stebbins, 1992 U.S. Dist. LEXIS 22760 at *3.

The first prong of the bona fide error defense requires that any violation committed on the part of the debt collector be unintentional.

> Section 1692k(c) states that a "debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The "preponderance of evidence" language in § 1692k(c) contemplates a factual inquiry.

Berg v. Merchs. Ass'n Collection Div., 586 F. Supp. 2d 1336, 1345 (S.D. Fla. 2008). Plaintiff and Defendant dispute whether Defendant's error in misapplying Plaintiff's payment was in fact intentional. Defendant maintains that it repeatedly sought information from Plaintiff's counsel through a series of e-mail messages, beginning on May 28, 2009, so that the mistake could be corrected. (Dumont Aff. ¶ 10; Def.'s Ex. 1.) Defendant claims that Plaintiff never responded to these requests for information and therefore the error could not be corrected. (Dumont Aff. ¶ 10.) In contrast, Plaintiff asserts that she brought the error to Defendant's attention at least twice, a March 5, 2009 letter and an April 17, 2009 facsimile. (Pl.'s Aff. ¶¶ 4-7.)

7

These disputed facts are material to the first prong of the bona fide error defense. If the facts exist as Plaintiff alleges, it would be reasonable to conclude that Defendant was intentionally derailing Plaintiff's good faith attempts to satisfy her judgments by ignoring her communications. Alternatively, if the facts exist as Defendant states, it would seem that Defendant made genuine attempts to correct an unintentional error. Under these circumstances, summary judgment is not appropriate. Morales, Inc., 249 F.3d at 121.

The purpose of the second prong is to evaluate whether the debt collector's actions were objectively reasonable, and thus merit excuse from liability under the FDCPA. See Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006) (quoting Johnson v. Riddle, 296 F. Supp. 2d 1283, 1288 (D. Utah 2003)). "[A] debt collector must prove by a preponderance of the evidence that its FDCPA violation. . .was caused by an objectively bona fide error (i.e., one that is plausible and reasonable). . . ." Wilhelm v. Credico, Inc., 519 F.3d 416, 420 (8th Cir. 2008). According to Plaintiff, "it was not objectively reasonable to post a check to the RAB account even though it was designated, on its face, to Discover." (Pl.'s Mem. 8.) In contrast, Defendant argues that the failure to post one $50 payment to the correct account, which did not include a CN# or file number, is a reasonable mistake. (Dumont Aff. ¶ 9.)

As the facts are presented, this court believes that reasonable jurors could disagree as to whether Defendant's error was reasonable. In one light, a juror might conclude that the absence of the "CN" or file number on Plaintiff's check was significant enough to characterize the misapplication of funds as reasonable and bona fide. Alternatively, the presence of the word "Discover" on Plaintiff's payment to Defendant may be persuasive enough for a reasonable juror to determine that Defendant's error was unreasonable. Accordingly, with regard to the second prong of the bona fide error defense, "the court determines that it is the province of the jury to

decide whether Defendant's [error] constitute[s] a bona fide clerical error." McDaniel v. South & Associates, P.C., 325 F. Supp. 2d 1210, 1219 (D. Kan. 2004). Further, the third prong of the bona fide error defense is not applicable to this case; there is no assertion of legal error or mistake of law.

The fourth prong of the bona fide error defense looks to specific procedures, employed by the Defendant, to avoid violations of the FDCPA in the practice of debt collection. Stebbins, 1992 U.S. Dist. LEXIS 22760, at *2-3.

> As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector 'maintained'--i.e., actually employed or implemented--procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue.

Reichert v. Nat'l Credit Sys., 531 F.3d 1002, 1006 (9th Cir. 2008) (quoting Johnson, 443 F.3d at 729). Defendant maintains several standard procedures for the purpose of avoiding error. (Dumont Aff. ¶ 8.) However, whether or not these procedures were "reasonably adapted to avoid the specific error at issue" is a contentious question. Reichert, 531 F.3d at 1006 (quoting Johnson, 443 F.3d at 729). In determining which file to post a payment to, Defendant will (1) cross check addresses on the check, envelope and file, (2) examine the consumer's file for any file notes that indicate if a payment is expected, (3) cross check any available bank account numbers between its files and the payment, (4) examine payment history for consistency, and (5) use any other available information to verify that the payment is being posted to the proper account. (Dumont Aff. ¶ 8.) On the other hand, Plaintiff assigns great weight to the fact that Defendant does not "double-check" (in the sense that two different people work together to avoid error) the posting of payments to consumer accounts. (Moylan Dep. 63.)

Ultimately, "[t]his is a fact-intensive inquiry" that requires more factual showing than the current record contains. Reichert, 531 F.3d at 1006. In order to come to a conclusion on this prong of the bona fide error defense, it will be important to know information regarding Defendant's past record of avoiding error using its current system, methods of avoiding error used by other organizations in Defendant's field, and what sort of precautions could properly be seen as "reasonably adapted" to avoiding this specific error. Thus, this court determines "that a jury is entitled to decide whether reasonable procedures existed at Defendant's office to ensure" that preventative measures were taken to avoid the specific error committed. McDaniel, 325 F. Supp. 2d at 1219.

Reasonable jurors could disagree as to whether Defendant is entitled to the statutory bona fide error defense. Therefore, both parties' motions for summary judgment are **denied** as to the issue of misapplication of payments, in violation of 15 U.S.C. § 1692h.

**D. Communications with Plaintiff**

Plaintiff claims further violation of the FDCPA, stemming from a direct communication between Defendant and Plaintiff on May 28, 2009. (Compl. ¶ 7.) On May 28, 2009 at 6:09PM, Defendant telephoned Plaintiff. Earlier that day, Plaintiff's counsel had informed Defendant via e-mail of her representation of Ms. Silver. However, counsel's e-mail was not opened until 6:30PM that day. (Dumont Aff. ¶¶ 6-7.) Therefore, at the time of contact with Ms. Silver, Defendant lacked knowledge of Ms. Silver's representation by an attorney. (Dumont Aff. ¶ 7.) The statute states: "a debt collector may not communicate with a consumer in connection with the collection of any debt. . .if the debt collector *knows* the consumer is represented by an

attorney with respect to such debt and has *knowledge of*, or can readily ascertain, such attorney's name and address. . . ." 15 U.S.C. § 1692c (emphasis added).

"Courts have construed the 'knowledge' requirement of 1692c(a)(2) to mean that a debt collector need possess 'actual knowledge that [the plaintiff/debtor] was represented by an attorney.'" Burger v. Risk Mgmt. Alternatives, Inc., 94 F. Supp. 2d 291, 293 (N.D.N.Y 2000) (internal citations omitted) (". . .it is clear that a plaintiff must establish actual knowledge to prevail on a 1692c(a)(2) claim. . . ."). Here, it is clear that the Defendant had no actual knowledge that Plaintiff was represented by counsel at the time it placed the phone call at issue. The communication from Plaintiff's counsel (in the form of an electronic mail message) had not yet been opened at the time Defendant contacted Plaintiff. (Dumont Aff. ¶¶ 6-7.) Therefore, Plaintiff's motion for summary judgment is **denied** and Defendant's motion for summary judgment is **granted** as to a violation of 15 U.S.C. § 1692c(a)(2).

**E. Wildcard Exception**

Plaintiff asserts that Defendant collected $1000.00 of exempted funds from Plaintiff's bank account, in violation of CONN. GEN. STAT. § 52-367b. (Compl. ¶ 9.) However, Defendant notes, and Plaintiff fails to refute, that Plaintiff neglected to actively claim this exemption. (Def.'s Mem. 4; Pl.'s Mem. 3-4.) According to the statute, exemptions must be properly claimed and are not automatic. See CONN. GEN. STAT. § 52-367b(e).

> "It is undisputed that the defendant failed to comply with the procedures set forth in General Statutes § 52-367b for asserting a claim for an exemption. The statute provides that the "judgment debtor shall give notice of a claim of exemption by delivering to the banking institution, by mail or other means, the exemption claim form or other written notice that an exemption is being claimed." General Statutes § 52-367b(e).

Milford F.C.U. v. Bender, 2003 Conn. Super. LEXIS 1631, at *3-4 (Conn. Super. Ct. May 28, 2003) (defendant's request for exemption denied). These statutory procedures are in place because "Connecticut does not offer a particular exemption for cash or bank accounts, but does provide a wildcard exemption which allows a debtor to elect $1,000.00 of any property." Shrestha v. State Credit Adjustment Bureau, Inc., 117 F. Supp. 2d 142, 145 (D. Conn. 2000). Thus, the Defendant had no reason to assume that Ms. Silver intended to exempt specific funds in her personal bank account. "Defendant did not violate the FDCPA by attempting to take and keep plaintiff's exempt funds. Since exemptions are not self-executing, defendant had no reason to know that plaintiff's bank account contained exempt funds." Id.

Furthermore, since the prescribed process for exempting funds was never completed, there is no issue regarding the release of exempted funds. (Def.'s Mem 4; Pl.'s Mem. 3-4.) Defendant's motion for summary judgment is **granted**, and Plaintiff's motion from summary judgment is **denied**, as to Plaintiff's claim under CONN. GEN. STAT. § 52-367b.

**F. Garnishing of Wages**

Plaintiff's final claim is that Defendant violated the FDCPA by informing Plaintiff that Defendant "would take 25% of her wages" without "advising plaintiff of the procedure whereby defendant normally agrees to modify an execution to a lesser figure." (Compl. ¶ 12.) Plaintiff's sole authority for this claim is Seabrook v. Onodaga Bureau of Medical Economics, Inc., 705 F. Supp. 81 (N.D.N.Y. 1989). Seabrook notes that "plaintiffs' due process rights therein were violated by the service of income executions upon judgment debtors without notice of the exemptions from garnishment under federal law and without notice of the procedures for challenging income executions provided by New York's Civil Practice Law and Rules."

Seabrook, 705 F. Supp. at 84. Here, there is no assertion that any such funds were ultimately garnished. (Pl.'s Mem. 5.; Compl. ¶ 12.) Thus, there was no opportunity for a violation of due process rights. Seabrook is inapplicable. Additionally, Plaintiff provides no authority or specificity to suggest the existence of a process "whereby defendant normally agrees to modify an execution to a lesser figure." (Compl. ¶ 12.) Seeing no other support for this claim, the court **grants** Defendant's motion for summary judgment and **denies** Plaintiff's motion from summary judgment, as to Plaintiff's claim under 15 U.S.C. § 1692e.

**III. CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment **[Doc. No. 42]** is **denied** and Defendant's motion for summary judgment **[Doc. No. 18]** is **granted in part** and **denied in part**. This case will proceed on Plaintiff's claim under 15 U.S.C. § 1692h.

SO ORDERED.

Dated at New Haven, Connecticut, this  28th  day of July, 2010.

/s/
Peter C. Dorsey
U.S. District Judge